1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8

9   Alexander C Baker, et al.,                    No. CV-21-00022-TUC-RM

10              Plaintiffs,                        **ORDER**

11  v.

12  American Society of Composers, Authors
    and Publishers, et al.,
13
                Defendants.
14

15          Plaintiffs Alexander C. Baker ("Baker") and Adam Bravery LLC ("Adam

16  Bravery") sue Defendants American Society of Composers, Authors and Publishers

17  ("ASCAP"), Broadcast Music, Inc. ("BMI"), Mike O'Neill ("O'Neill"), and Erika

18  Stallings ("Stallings"), asserting fifteen causes of action on behalf of themselves and

19  purported classes of similarly situated songwriters ("Songwriters") and royalty assignees

20  ("Assignees"). (Doc. 10.) Currently pending before the Court are Plaintiffs' Motion for

21  Preliminary Injunction (Doc. 11), Plaintiffs' Motion for Class Certification (Doc. 12),

22  Defendants BMI and O'Neill's Motion to Dismiss (Doc. 22), and Defendant ASCAP's

23  Motion to Dismiss (Doc. 25). Plaintiffs responded to Defendants' Motions to Dismiss

24  (Docs. 27, 30), and Defendants replied (Docs. 32, 36). Defendant ASCAP responded to

25  Plaintiff's Motion for Class Certification (Doc. 15), but Plaintiff did not file a reply.

26          For the following reasons, Defendants' Motions to Dismiss will be partially

27  granted and partially taken under advisement pending supplemental briefing, Plaintiffs'

28  Motion for Preliminary Injunction will be denied as moot, and Plaintiffs' Motion for

Class Certification will be taken under advisement.

## I.     Plaintiffs' First Amended Complaint

Plaintiffs allege the following in their First Amended Complaint ("FAC"). ASCAP and BMI are not-for-profit Performance Royalty Organizations ("PROs") that act as agents to collect and distribute performance royalty money to their writer and publisher members.  (Doc. 10 at 6, 14, 17, 20 ¶¶ 1, 44, 59-60, 73.)[1]  O'Neill is the Chief Executive Officer of BMI, and Stallings was in-house counsel for BMI at all relevant times.  (*Id.* at 14 ¶¶ 45-46.)  Both ASCAP and BMI are incorporated in Delaware and have their principal offices in New York.  (*Id.* at 11, 14 ¶¶ 26, 42-43.)  O'Neill and Stallings reside in New York.  (*Id.* at 11 ¶ 26.)

ASCAP and BMI have an estimated 1.5 million writer members between them. (*Id.* at 7 ¶ 4.)  Songwriters assign to ASCAP and BMI the right to license the public performances of their songs and must sign a standard writer's agreement.  (*Id.* at 18, 20, 22 ¶¶ 66, 74, 85.)  ASCAP and BMI in turn enter into license agreements with end-users of recorded music, such as TV networks, charging an annual blanket license fee in exchange for the public performance rights to their entire repertories of music.  (*Id.* at 18, 20 ¶¶ 67, 75.)  ASCAP and BMI together collect approximately $2 billion in license fees on an annual basis and, after deducting operating expenses, distribute the money on a quarterly basis as performance royalties.  (*Id.* at 18 ¶ 68.)  ASCAP co-mingles the money it collects, as does BMI.  (*Id.* at 20 ¶ 75.)  The co-mingled funds are purportedly distributed according to set formulas based on performance credits and a weighting factor.  (*Id.* at 18, 20-21 ¶¶ 68, 76-78.)  Plaintiffs do not know the specifics of the formulas and are unable to verify whether ASCAP and BMI are adhering to them.  (*Id.* at 21 ¶ 78.)

The only other significant PRO is a private, invitation-only organization that Songwriters have no right to join, and thus for all intents and purposes, any Songwriter who seeks to earn performance royalties must sign with either ASCAP or BMI.  (*Id.* at 7-

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

8 ¶¶ 6, 8-9.)   A Songwriter may belong to only one PRO at a time, and any songs registered with that PRO remain with that PRO even if the Songwriter later changes his or her affiliation.  (*Id.* at 22 ¶ 86.)  Due to prior federal antitrust litigation, ASCAP and BMI are bound by federal consent decrees setting forth the terms and conditions under which they are allowed to operate.  (*Id.* at 7, 21 ¶¶ 4, 79.)  Among other mandates, the consent decrees require both ASCAP and BMI to collect performance royalties for any Songwriter with at least one published work.  (*Id.* at 7, 21-22 ¶¶ 5, 81-82.)  BMI's consent decree requires BMI to include a mandatory arbitration clause in its standard writer's agreement, but ASCAP's consent decree does not.  (*Id.* at 7, 22-24, 26 ¶ 7, 83-84, 93-94, 112.)

Plaintiff Baker, a resident of California, is a songwriter and music producer who was a member of ASCAP from 1990-1999 and has been a member of BMI since 1999. (*Id.* at 8, 10-11, 13, 22, 25 ¶¶ 12, 18, 25, 38, 87, 99-100, 106.)  He has co-written numerous songs with Clair Marlo, whom he met in 1993, married in 1995, and filed for divorce from in 2014.  (*Id.* at 25-26, 40 ¶¶ 101-107, 179.)  The divorce proceedings resulted in a stipulated order that music royalties be equalized between Baker and Marlo for all songs created after January 11, 1995 and before April 7, 2015.  (*Id.* at 40 ¶ 180.) To effectuate that order, Baker and Marlo jointly signed and mailed letters of direction to ASCAP and BMI, instructing them to equalize the royalties on all music registered after January 11, 1995 and before June 1, 2015.  (*Id.* at 40 ¶¶ 181-182.)[2]  BMI complied with the letter of direction until March 2020.  (*Id.* at 41 ¶ 183.)  ASCAP did not comply with the letter of direction.  (*Id.* at 10, 41 ¶¶ 19, 184.)

Plaintiff Adam Bravery is an Arizona limited liability company formed by Baker and two other equal members in May 2018 for the purpose of producing and commercially exploiting a music-driven, animated motion picture authored by Baker.

---

[2] Baker and Marlo decided to use the date of registration instead of the date of creation after realizing that determining the date of creation for each of thousands of songs would be impossible.  (*Id.* at 40 ¶ 181.)  They used the June 1, 2015 cut-off date after reasoning that it typically takes 4-6 weeks for a song to be registered after submission to a record company.  (*Id.*)

(*Id.* at 11, 13, 16, 41-42 ¶¶ 24, 40, 57, 188-190.)  Prior to forming Adam Bravery, Baker formed an entity named Write Hear, LLC and assigned his BMI royalty stream to that entity.  (*Id.* at 41 ¶ 185-187.)  On July 9, 2018, Write Hear, LLC assigned Baker's royalty stream to Adam Bravery.  (*Id.* at 8, 42, 44 ¶¶ 12, 191, 203.)  BMI began paying Adam Bravery royalties in September 2018.  (*Id.* at 42 ¶ 192.)  Adam Bravery depends on the royalty payments in order to operate and to pay Baker's salary.  (*Id.* at 16, 42 ¶¶ 57, 195.)

On July 16, 2019, Stallings sent Baker an email stating that his assignment of works to Adam Bravery appeared to violate the terms of his divorce from Marlo.  (*Id.* at 42-43 ¶ 196.)  According to Plaintiffs, the terms of Baker and Marlo's divorce prevent either individual from assigning any work created between January 11, 1995 and April 7, 2015, but Baker's assignment of his share of the court-equalized performance royalties did not violate the terms of the divorce because a performance royalty is not a work.  (*Id.* at 43-44 ¶¶ 197-207.)  On August 21, 2019, Baker and Marlo received a letter from Stallings stating that, absent resolution of Baker and Marlo's dispute concerning whether Baker's assignment of his BMI royalty stream to Adam Bravery violated the terms of their divorce, BMI would be placing the disputed royalties on withhold and would proceed with filing a third-party interpleader action to deposit the royalties with the court until resolution of the dispute.  (*Id.* at 44-45 ¶¶ 208, 212.)  On September 26, 2019, BMI's outside counsel AnnMarie Mori sent Baker an email asking him to stipulate that he and Marlo had a dispute, which Baker refused to do.  (*Id.* at 46 ¶ 219.)

On October 2, 2019, Marlo filed a contempt action in family court, alleging that Baker's assignment of his royalties violated the terms of their divorce.  (*Id.* at 46-47 ¶ 221.)  On October 7, 2019, BMI sent a letter to Marlo and Baker stating that it had received notice of Marlo's contempt action and was placing a hold on the assigned royalties pending resolution of the dispute concerning the assignment.  (*Id.* at 47 ¶ 222-223.)  On October 10, 2019, the other members of Adam Bravery fired Baker from his full-time job.  (*Id.* at 47 ¶ 224.)  On November 7, 2019, the family court dismissed Marlo's contempt action.  (*Id.* at 47 ¶ 225.)  On March 18, 2020, BMI distributed

royalties to Adam Bravery's bank account but then reversed the deposit and has failed to pay royalties to date.  (*Id.* at 48 ¶¶ 229-234.)  As of March 2021, BMI has failed to pay a total of $47,311.37 in royalties.  (*Id.* at 48 ¶ 234.)  As a result of the withholding of royalties, Adam Bravery has necessarily ceased all operations, and its net value has diminished by at least $150,000.  (*Id.* at 51, 53 ¶ 258-259, 270.)

The first six counts of the SAC are asserted by Plaintiffs on behalf of themselves and purported classes of Songwriters and Assignees.  In Counts One through Five, Plaintiffs seek declaratory judgments stating (1) that the mandatory arbitration clause contained in BMI's standard writer's agreement is void for economic duress; (2) that ASCAP and BMI, and their officials, are state actors for purposes of 42 U.S.C. § 1983; (3) that BMI's arbitration clause, required by its consent decree, is unconstitutional because it deprives Songwriters of their rights to petition and to a jury trial without due process; (4) that Songwriters and Assignees have a federally protected statutory right to collect performance royalties; and (5) that ASCAP and BMI owe a fiduciary duty to Songwriters and Assignees, giving Songwriters and Assignees the right to audit ASCAP and BMI and to know the entirety of the formulas by which royalties are allocated.  (*Id.* at 26-38 ¶¶ 111-169.)  In Count Six, Plaintiffs allege that ASCAP and BMI breached their fiduciary duty by manipulating the formulas by which performance royalty money is distributed so as to underpay Songwriters.  (*Id.* at 38 ¶¶ 170-176.)  In addition to declaratory relief, Plaintiffs seek as relief on the class claims monetary damages, an injunction prohibiting ASCAP and BMI from disclaiming a fiduciary duty to Songwriters and Assignees, an injunction prohibiting BMI from compelling arbitration as a precondition of collecting performance royalties for Songwriters, an accounting of money received and distributed, and reimbursement of Plaintiffs' costs and attorney fees.  (*Id.* at 38-39 ¶ 177.)

In Count Seven of the FAC, Plaintiffs Baker and Adam Bravery assert a claim under 42 U.S.C. § 1983 against BMI, alleging that BMI, Stallings, and O'Neill violated their federally protected rights by withholding royalty payments.  (*Id.* at 48-50 ¶¶ 235-

246.)  In Count Eight, Adam Bravery asserts in the alternative a breach of contract claim against BMI, alleging that BMI's withholding of royalty payments violates the right to payment held by Adam Bravery by virtue of Baker's writer's agreement with BMI.  (*Id.* at 50-51 ¶¶ 247-260.)  In Count Nine, Adam Bravery asserts a breach of fiduciary duty claim against BMI, alleging that a fiduciary relationship was formed between BMI and Baker upon the signing of Baker's writer's agreement with BMI in 1999, that the fiduciary relationship extends to Adam Bravery, and that BMI's withholding of royalty payments violates its fiduciary duty.  (*Id.* at 51-53 ¶¶ 261-271.)  In Count Ten, Baker and Adam Bravery assert a claim for constructive fraud against BMI, O'Neill, and Stallings, alleging that they fabricated a false dispute between Baker and Marlo as a pretext to impose a royalty hold against Baker while continuing to pay royalties to Marlo.  (*Id.* at 53-56 ¶¶ 272-289.)  In Count Eleven, Baker asserts a claim for intentional infliction of emotional distress against BMI, O'Neill, and Stallings.  (*Id.* at 56-60 ¶¶ 290-311.)  In Count Twelve, Baker asserts a claim for fraudulent inducement against BMI and Stallings, alleging that BMI made false and/or misleading statements to prevent Baker from joining BMI to Baker and Marlo's family law case.  (*Id.* at 60-63 ¶¶ 312-328.)  In Count Thirteen, Baker asserts a § 1983 claim against ASCAP, alleging that ASCAP violated his federally protected right to collect performance royalties by failing to pay him equalized royalties since September 2016.  (*Id.* at 63-64 ¶¶ 329-336.)  In Count Fourteen, Baker asserts in the alternative a breach of contract claim against ASCAP.  (*Id.* at 64 ¶¶ 337-343.)  Finally, in Count Fifteen, Baker asserts a breach of fiduciary duty claim against ASCAP arising out of ASCAP's failure to pay equalized royalties since September 2016.  (*Id.* at 65 ¶¶ 344-347.)  Plaintiffs seek compensatory damages against BMI and ASCAP, punitive damages against BMI, injunctive relief, and reimbursement of their costs and attorney's fees.  (*Id.* at 65-66 ¶ 349.)

. . . .

. . . .

. . . .

## II.     BMI and O'Neill's Motion to Dismiss

BMI and O'Neill (collectively, "the BMI Defendants") move to dismiss Plaintiffs' FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for lack of personal and subject-matter jurisdiction.  (Doc. 22.)  The BMI Defendants argue, first, that Plaintiffs lack standing to assert the claims alleged in the FAC.  (*Id.* at 14-17.) The BMI Defendants further argue that, even if Baker has standing, his claims are subject to mandatory arbitration.  (*Id.* at 15-16.)  The BMI Defendants then argue that Counts One through Twelve of the FAC fail to state claims on which relief can be granted.  (*Id.* at 17-25.)   Specifically, the BMI Defendants argue (1) Count One fails because the allegations of the FAC and the terms of BMI's consent decree show that Songwriters have a  choice of signing with a PRO such as ASCAP or BMI and/or directly licensing the public performance of their work to end users, and thus Plaintiffs cannot show that BMI's writer's agreement is void and unenforceable on the grounds that it is signed under coercion; (2) Counts Two and Three fail because BMI is a private party and its consent decree does not convert it into a state actor; (3) Counts Four and Seven fail because there is no federally guaranteed right to collect royalties from BMI; (4) Counts Five, Six, Nine, and Ten fail because the FAC makes no allegations establishing the existence of a fiduciary relationship rather than a mere contractual relationship; (5) Count Eight fails because the FAC does not allege a material breach of contract or proximate cause; (6) Count Eleven fails because BMI's routine act of placing a litigation hold on the assigned royalties pending a court's determination of ownership does not rise to the level of extreme and outrageous conduct supporting a claim for intentional infliction of emotional distress; and (7) the fraud claims alleged in Counts Ten and Twelve are not pled with the required  specificity  and  Plaintiffs  cannot  show  reliance  on  any  purported misrepresentation.  (*Id.*)

The BMI Defendants further argue that this Court lacks subject-matter jurisdiction over this action and lacks personal jurisdiction over O'Neill.  (*Id.* at 25-26.)  Specifically, the BMI Defendants argue that there is no federal subject-matter jurisdiction because

1   Plaintiffs lack standing and the FAC fails to allege any federal claims on which relief can
2   be granted.  (*Id.* at 26.)   The BMI Defendants also argue that there is no diversity
3   jurisdiction because the FAC alleges that BMI failed to pay a total of $47,311.37 in
4   royalties, which shows that less than the jurisdictional minimum is in controversy.  (*Id.*)
5   Finally, the BMI Defendants argue that the FAC makes no allegations supporting the
6   assertion of specific or general personal jurisdiction over O'Neill.  (*Id.* at 25-26.)

7       In opposition to the BMI Defendants' Motion, Plaintiffs argue that they have
8   standing to assert both the class claims and individual claims raised in the FAC.  (Doc. 27
9   at 6-10.)  Plaintiffs also argue that BMI's mandatory arbitration clause is unenforceable
10  and, even if it is enforceable, it does not cover Plaintiffs' dispute regarding whether BMI
11  owes Songwriters a fiduciary duty.  (*Id.* at 7-8.)  Plaintiffs assert that all causes of action
12  in the FAC are well-founded and well-pled.  (*Id.* at 13-20.)  Plaintiffs further argue that
13  O'Neill's alleged act of creating a false pretext on which to improperly withhold royalty
14  payments to Arizona citizen Adam Bravery satisfies the minimum contacts test for
15  personal jurisdiction.  (*Id.* at 20-21.)  Plaintiffs argue that this Court has federal-question
16  jurisdiction under the Declaratory Judgment Act, the Civil Rights Act, the United States
17  Constitution, and ASCAP and BMI's consent decrees.  (*Id.* at 22.)   Finally, Plaintiffs
18  argue that this Court also has diversity jurisdiction because the amount in controversy
19  exceeds the jurisdictional minimum.  (*Id.* at 21-22.)

20  **III.    ASCAP's Motion to Dismiss**

21      ASCAP moves to dismiss the FAC for lack of subject-matter jurisdiction and
22  failure to state a claim on which relief can be granted.  (Doc. 25.)  ASCAP argues, first,
23  that this Court lacks federal-question jurisdiction because (1) the FAC fails to state a
24  claim for which relief can be granted under 42 U.S.C. § 1983; (2) the Declaratory
25  Judgment Act does not create subject-matter jurisdiction where none otherwise exists;
26  and (3) ASCAP's consent decree reserves exclusive jurisdiction over matters implicating
27  the decree to the United States District Court for the Southern District of New York.  (*Id.*
28  at 11.)  ASCAP further argues that this Court lacks diversity jurisdiction because the

parties are not completely diverse.  (*Id.* at 11-12.)

ASCAP then argues that the FAC fails to state a claim on which relief can be granted.  (*Id.* at 12-22.)  Specifically, ASCAP argues (1) Counts Two, Four, and Thirteen fail because the FAC does not plausibly allege that ASCAP is a state actor or that Plaintiffs have been deprived of a right secured by the United States Constitution or a federal statute; (2) Counts Five, Six, and Fifteen fail because ASCAP is not a fiduciary of its members and the FAC fails to plausibly allege that ASCAP engaged in any misconduct; and (3) Count Fourteen fails because ASCAP's alleged failure to implement the instructions in Baker and Marlo's letter of direction did not breach any contract to which ASCAP is a party.  (*Id.*)  Finally, ASCAP argues that, to the extent the FAC plausibly alleges any claims against it, the claims should be transferred to the United States District Court for the District of New York because the governing documents of Baker's writer's agreement with ASCAP contain a forum-selection clause providing that members' claims against ASCAP are subject to the exclusive jurisdiction of the courts of New York.  (Doc. 25 at 8 n.1, 22.)

In their opposition to ASCAP's Motion, Plaintiffs "submit that diversity jurisdiction does not apply."  (Doc. 30 at 14.)  Plaintiffs argue that this Court has federal question jurisdiction because ASCAP is a state actor for civil rights purposes and Songwriters have a federally protected right to collect performance royalties.  (*Id.* at 10-14.)  Plaintiffs then argue that supplemental jurisdictional over their state claims is appropriate.  (*Id.* at 14-15.)  Plaintiffs argue that the claims asserted against ASCAP are plausible and adequately pled.  (*Id.* at 15-21.)  Plaintiffs do not oppose transfer to the Southern District of New York, so long as the entire case is transferred.  (*Id.* at 21-22.)

## IV.    Discussion

### A.    Federal-Question Jurisdiction

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) when the Court lacks subject-matter jurisdiction.  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]"  *Kokkonen v.*

1   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  District courts have original

2   jurisdiction, known as federal-question jurisdiction, in "all civil actions arising under the

3   Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

4       Plaintiffs' FAC alleges several bases for this Court's assertion of federal-question

5   jurisdiction.  First, the FAC alleges that this Court has jurisdiction under the Declaratory

6   Judgment Act, 28 U.S.C. § 2201.  (Doc. 10 at 10 ¶ 20.)  The Court disagrees.  The

7   Declaratory Judgment Act allows a federal court to "declare the rights and other legal

8   relations of any interested party," but only in cases "of actual controversy within its

9   jurisdiction."  28 U.S.C. § 2201.  "Because the Declaratory Judgment Act does not by

10  itself confer federal subject-matter jurisdiction," a plaintiff seeking declaratory relief

11  must "plead an independent basis for federal jurisdiction."  *Nationwide Mut. Ins. Co. v.*

12  *Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005).  Accordingly, 28 U.S.C. § 2201 does

13  not confer subject-matter jurisdiction on this Court.

14      Plaintiffs' FAC also alleges that ASCAP and BMI's consent decrees[3] expressly

15  retain federal jurisdiction.  (Doc. 10 at 10 ¶ 22.)  BMI's consent decree states that the

16  Southern District of New York retains jurisdiction "for the purpose of enabling either of

17  the parties" to the consent decree to apply to that court "at any time for such further

18  orders and directions as may be necessary or appropriate for the construction or carrying

19  out" of the consent decree, "for the modification of any of the provisions thereof, for the

20  enforcement of compliance therewith and for the punishment of violations thereof."

21  (Doc. 10-1 at 8.)  ASCAP's consent decree similarly states that the Southern District of

22  New York retains jurisdiction "for the purpose of enabling any of the parties" to the

23  consent decree to apply "for such further orders and directions as may be necessary or

24  appropriate in relation to the construction of or carrying out of" the consent decree, "for

25  the modification thereof, for the enforcement of compliance therewith and for the

26  punishment of violations thereof."  (Doc. 10-1 at 99.)  Plaintiffs are not parties to either

27  ───────────────
    [3] Both consent decrees are attached to Plaintiffs' FAC.  (Doc. 10-1 at 2-10, 92-100.)  The
28  Court may consider documents attached to a complaint and matters of judicial notice in
    ruling on a motion to dismiss.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
    2003).

consent decree, and neither consent decree confers federal jurisdiction over the claims asserted in Plaintiffs' FAC.

Finally, Plaintiffs' FAC asserts that this Court has federal-question jurisdiction because Plaintiffs seek to hold Defendants liable for civil rights violations pursuant to 42 U.S.C. § 1983.  (Doc. 10 at 10 ¶ 21.)  Counts Seven and Thirteen of the FAC assert claims under 42 U.S.C. § 1983, while Counts Two, Three, and Four seek declaratory judgments related to elements of a § 1983 claim.  (*Id.* at 28-35, 48-50, 63-64 ¶¶ 122-160, 235-246, 329-336.)  "Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction[.]"  *Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th Cir. 1999).  Accordingly, this Court has federal-question jurisdiction over Counts Two, Three, Four, Seven, and Thirteen of the FAC.  However, as discussed below, none of those counts state a claim on which relief can be granted.

### B.    Failure to State a Federal Claim

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a complaint fails to state a claim on which relief can be granted.  A dismissal under Rule 12(b)(6) "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks omitted).  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  A court evaluating a motion to dismiss must view the allegations of the complaint "in the light most favorable to the plaintiff."  *Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990).  All well-pleaded factual allegations of

the complaint must be accepted as true; however, legal conclusions and other conclusory statements are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678-79, 681.

When evaluating a Rule 12(b)(6) motion, a court may not consider evidence outside the pleadings unless it converts the motion into a Rule 56 motion for summary judgment and gives the nonmovant an opportunity to respond. Fed. R. Civ. P. 12(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Ritchie*, 342 F.3d at 908; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

If a complaint falls short of meeting the necessary pleading standards, a district court should dismiss with leave to amend unless the deficiencies of a pleading "could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) ("We have adopted a generous standard for granting leave to amend from a dismissal for failure to state a claim . . . ."). Failing to give leave to amend when a plaintiff could include additional facts to cure a complaint's deficiencies is an abuse of discretion. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637-38 (9th Cir. 2012).

To prevail on a § 1983 claim, a plaintiff must show that "(1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (internal quotation marks and alterations omitted)). Private conduct does not give rise to liability under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). The action of a private entity may constitute action taken under color of state law for purposes of § 1983 only "where there is significant state involvement in the action," either because (1) the private entity exercises powers traditionally reserved to the state ("public function test"); (2) the private entity willfully participates in joint activity with the state or its agents that causes a constitutional

deprivation ("joint action test"); (3) the state has "exercised coercive power" over, or provided significant overt or covert encouragement to, the private entity ("state compulsion test"); or (4) there is a "sufficiently close nexus" between the state and the challenged action of the private entity ("nexus test").  *Johnson v. Knowles*, 113 F.3d 1114, 1118-20 (9th Cir. 1997) (internal quotation marks omitted).

Plaintiffs rely on the state compulsion test, alleging in Count Two of the FAC that ASCAP and BMI should be considered state actors because their conduct is regulated by the consent decrees entered in the antitrust litigation brought by the United States in the United States District Court for the Southern District of New York.  (Doc. 10 at 28-30 ¶¶ 122-136.)  The state compulsion test "originated in cases in which the government itself, not a private entity, was the defendant."  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836 (9th Cir. 1999).  When, in contrast, a plaintiff seeks to hold a private defendant liable, "the mere fact that the government compelled a result does not suggest that the government's action is 'fairly attributable to the private defendant."  *Id.* at 838.  There must be "some other nexus between the private entity and the government" for the private defendant to be found "responsible for the government's compulsion."  *Id.*  The allegations of the FAC are insufficient to satisfy the state compulsion test, or any other test for determining whether the action of a private entity should be deemed governmental action.  Furthermore, Plaintiffs cite no authority supporting their novel proposition that *federal* consent decrees can transform private entities into *state* actors for purposes of § 1983.[4]  The FAC fails to plausibly allege that BMI or ASCAP took any actions "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  Count Two of the FAC fails to state a claim on which relief can be granted, and it will be dismissed.

In Count Three of the FAC, Plaintiffs allege that BMI's mandatory arbitration

---

[4] Plaintiffs appear to erroneously interpret the term "state" as used in § 1983 to simply mean "government."  But an action under § 1983 is limited to plaintiffs whose federal rights, privileges, or immunities were violated under color of law of any "State or Territory" of the United States or of "the District of Columbia."  42 U.S.C. § 1983.  Actions taken under color of federal law do not give rise to liability under 42 U.S.C. § 1983.

clause, and the consent decree requiring it, constitute an impermissible prior restraint of Plaintiffs' First Amendment right to petition and Seventh Amendment right to a jury trial, and that the prior restraint was imposed without due process.  (Doc. 10 at 30-33 ¶¶ 137-149.)  "[T]he Due Process Clause protects individuals only from governmental and not from private action."  *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 930 (1982).  As discussed above, the FAC fails to plausibly allege that BMI and/or ASCAP are governmental actors as opposed to merely private actors.  Count Three of the FAC accordingly fails to state a claim on which relief can be granted, and it will be dismissed.

In Count Four of the FAC, Plaintiffs allege that they have a federally protected right to collect performance royalties as a result of ASCAP and BMI's consent decrees, relying upon *Maine v. Thiboutot*, 448 U.S. 1 (1980).  (Doc. 10 at 33-35 ¶¶ 150-160.)  In *Thiboutot*, the Supreme Court held that § 1983 encompasses claims based on violations of federal *statutes*, including the Social Security Act.  448 U.S. at 2-8.  The consent decrees of BMI and ASCAP are not federal statutes, and *Thiboutot* provides no support for Plaintiffs' position that they have a federally protected right to collect royalty payments.  Any right of Plaintiffs to collect performance royalties from BMI and ASCAP arises not from federal constitutional or statutory law but from the writer's agreements that Baker signed with BMI and ASCAP.  Count Four of the FAC fails to state a claim on which relief can be granted, and it will be dismissed.

Counts Seven and Thirteen of the FAC assert claims under 42 U.S.C. § 1983 against BMI and ASCAP respectively.  (Doc. 10 at 48-50, 63-64 ¶¶ 235-246, 329-336.)  Because the FAC does not plausibly allege state action or the deprivation of federal rights, Counts Seven and Thirteen fail to state claims on which relief can be granted, and they will be dismissed.

The Court will dismiss Counts Two, Three, Four, Seven, and Thirteen with prejudice because the deficiencies of the claims could not possibly be cured by the allegation of other facts.  *See Lacey*, 693 F.3d at 926.

. . . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.       Diversity Jurisdiction

In addition to federal-question jurisdiction, Plaintiffs' FAC asserts diversity jurisdiction.  (Doc. 10 at 11 ¶¶ 23-29.)  District courts have diversity jurisdiction under 28 U.S.C. § 1332(a)(1) in "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Diversity jurisdiction under § 1332(a) exists only if each plaintiff is diverse from each defendant.  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001).  The presence of a non-diverse defendant destroys complete diversity and renders the case beyond a federal court's power to decide.  *Id.* at 1005.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," whereas "in a factual attack, the challenger disputes the truth of the allegations[.]"  *Id.*  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and it "need not presume the truthfulness of the plaintiff's allegations."  *Id.*  If a party presents affidavits or other evidence challenging subject-matter jurisdiction, the party asserting jurisdiction "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.* (internal quotation marks omitted).

In its Motion to Dismiss, ASCAP factually attacks the FAC's assertion of diversity jurisdiction, arguing that its presence in this lawsuit destroys complete diversity because it is a membership association, its citizenship is determined by the citizenship of all of its members, and it has members in California, where Baker is a citizen, and Arizona, where Adam Bravery is a citizen.  (Doc. 25 at 11-12.)  ASCAP attaches to its Motion to Dismiss a declaration by Jackson Wagener, its Senior Vice President of Business and Legal Affairs, who avers that ASCAP is a membership organization with members in all fifty states including California and Arizona.  (Doc. 26 at 2.)  In response

to ASCAP's Motion to Dismiss, Plaintiffs concede that "diversity jurisdiction does not apply." (Doc. 30 at 14.) Plaintiffs do not present any affidavits or other evidence to satisfy their burden of proving complete diversity. *See Safe Air for Everyone*, 373 F.3d at 1039. Accordingly, the Court finds that it lacks diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

District courts also have diversity jurisdiction in class actions in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and any member of the plaintiff class "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Inves., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). If damages are unstated in the complaint, the party seeking to invoke class action diversity jurisdiction "bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Id.*; *see also Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010).

The FAC does not specify the amount of damages sought on the class claims, but it alleges that ASCAP and BMI collectively have 1.5 million writer members and collect over $2 billion in license fees annually. (Doc. 10 at 7, 18 ¶¶ 4, 68.) In response to BMI's Motion to Dismiss, Plaintiffs aver that the class-wide amount in controversy exceeds $5 million. (Doc. 27 at 21-22.) However, as noted above, in response to ASCAP's Motion to Dismiss, Plaintiffs aver that diversity jurisdiction does not apply in this case. (Doc. 30 at 14.)

The parties' briefs do not adequately address whether this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), and the current record is insufficient to allow the Court to conclusively determine that issue. Accordingly, the Court will require supplemental briefing regarding whether this Court has class action diversity jurisdiction under 28 U.S.C. § 1332(d)(2).[5]

---

[5] Because it is unclear whether there is subject-matter jurisdiction over Counts One, Five, and Six, the Court takes under advisement Defendants' Rule 12(b)(6) arguments concerning those counts, the BMI Defendants' argument regarding mandatory arbitration, and ASCAP's argument concerning transfer to the District of New York.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.      Supplemental Jurisdiction Over Individual Claims

In a civil action in which a district court has original jurisdiction, the court generally also has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Claims form part of the same case or controversy if they share "a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The only surviving claims over which this Court may have original jurisdiction are the class claims asserted in Counts One, Five, and Six.  None of the individual claims arise out of the same nucleus of operative facts that give rise to those class claims.  The individual claims arise out of ASCAP and BMI's withholding of royalty payments on the basis of a purported dispute between Baker and Marlo concerning Baker's assignment of his royalties.  (Doc. 10 at 40-65 ¶¶ 179-347.)  In contrast, Count One relates to the enforceability of BMI's mandatory arbitration clause, Count Five relates to whether ASCAP and BMI owe Songwriters and Assignees a fiduciary duty, and Count Six alleges that ASCAP and BMI breach their purported fiduciary duty by manipulating the formulas by which performance royalties are distributed to Songwriters.  (Doc. 10 at 26-28, 36-38 ¶¶ 111-121, 161-176.)  Because the individual claims do not arise out of a common nucleus of operative fact as the only claims over which this Court might have original jurisdiction, the Court declines to exercise supplemental jurisdiction over the individual claims.  Accordingly, Counts Eight, Nine, Ten, Eleven, Twelve, Fourteen, and Fifteen of the FAC will be dismissed without prejudice for lack of jurisdiction.

Because Defendants O'Neill and Stallings are named as defendants only with respect to Plaintiffs' individual claims, which are all being dismissed for failure to state a claim on which relief can be granted or for lack of jurisdiction, Defendants O'Neill and

1    Stallings will be dismissed.[6]

2        E.    **Standing**

3        "[A]ny person invoking the power of a federal court must demonstrate standing to

4    do so. This requires the litigant to prove that he has suffered a concrete and particularized

5    injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a

6    favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Standing

7    relates to the Court's subject matter jurisdiction, and it is therefore proper to raise this

8    issue in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *White*

9    *v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

10       The BMI Defendants argue that Baker lacks standing to pursue claims arising

11   from BMI's hold on royalty distributions because Baker permanently and irrevocably

12   assigned his BMI royalty stream, and he cannot bring a direct action for injuries to Adam

13   Bravery.  (Doc. 22 at 14-15; Doc. 32 at 6.)  The BMI Defendants also argue that Adam

14   Bravery lacks standing to pursue claims arising from Baker's contractual relationship

15   with BMI because the assignment of royalties from Baker to Write Hear and Write Hear

16   to Adam Bravery did not include the assignment of any tort claims or contractual rights.

17   (Doc. 22 at 16; Doc. 32 at 6.)   These arguments appear to be directed at Plaintiffs'

18   individual claims, and it is not clear how they apply to the surviving class claims.[7]  If the

19   BMI Defendants believe these arguments apply to the class claims, they may clarify their

20   position in their supplemental brief on jurisdiction.

21       The BMI Defendants argue separately that Plaintiffs lack standing to assert Counts

22   One through Four of the FAC[8] because they have no standing to bring a collateral

23   ───────────────────────

24   [6] Defendant Stallings has not filed a notice of appearance and, due to Plaintiffs' failure to file proof of service as to any defendants, it is not clear whether Stallings has been served.   Nevertheless, dismissal of Stallings is appropriate for the reasons discussed herein.

25   [7] Furthermore, the parties' briefs do not make clear what law should apply to determine the effect of the assignment of royalties to Adam Bravery.  If the BMI Defendants continue to assert these standing arguments in their supplemental brief on jurisdiction, they must clarify the applicable law.

26   [8] For the reasons discussed in Section IV(B), *supra*, Counts Two through Four of the FAC will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.  Accordingly, the Court does not address the BMI Defendants' standing argument with respect to Counts Two through Four.

27

28

proceeding to alter, challenge, or interpret the terms of BMI's consent decree. (Doc. 22 at 16-17.) In support of this argument, the BMI Defendants rely upon *Blue Chip Stamps v. Manor Drug Stores*, in which the United States Supreme Court stated that a "well-settled line of [Supreme Court] authority . . . establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." 421 U.S. 723, 750 (1975) (citing *United States v. Armour & Co.*, 402 U.S. 673 (1971)); *Buckeye Coal & Ry. Co. v. Hocking Valley Ry. Co.*, 269 U.S. 42 (1925)).[9] In response, Plaintiffs argue that they are not seeking to enforce the consent decree. (Doc. 27 at 10.)

*Blue Chip Stamps* and the other cases cited by the BMI Defendants address the ability of non-parties to a consent decree to *enforce* the decree. (Doc. 22 at 17.) None of the cited cases address a non-party's ability to *challenge* a consent decree. The Supreme Court has held that non-parties to a consent decree can challenge the consent decree in a separate action. *Martin v. Wilks*, 490 U.S. 755, 762 (1989) ("A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.").[10] Count One of the FAC does not seek to enforce BMI's consent decree; rather, it challenges the consent decree's requirement that BMI include an arbitration clause in its writer's agreements. Accordingly, the Court rejects the BMI Defendants' argument that Plaintiffs lack standing under *Blue Chip Stamps* and its progeny to assert Count One.

### F. Personal Jurisdiction

The BMI Defendants argue that this Court lacks personal jurisdiction over O'Neill. (Doc. 22 at 25-26.) Because O'Neill is sued only with respect to Plaintiffs' individual claims, and the individual claims are all being dismissed either for failure to state a claim or for lack of jurisdiction, O'Neill will be dismissed as a defendant, and the

---

[9] The holding in *Blue Chip Stamps* applies only to "incidental third party beneficiaries" rather than "intended third party beneficiaries." *Hook v. Ariz. Dep't of Corrs.*, 972 F.2d 1012, 1015 (9th Cir. 1992).

[10] Section 108 of the Civil Rights Act of 1991 partially superseded *Martin* in aspects not relevant here.

Court declines to address his arguments concerning personal jurisdiction.

**V.     Motion for Preliminary Injunction**

Plaintiffs seek a preliminary injunction requiring BMI to dissolve its royalty withhold and release the withheld royalty payments to Adam Bravery. (Doc. 11.) The requested preliminary injunctive relief relates only to Plaintiffs' individual claims, which the Court is dismissing for failure to state a claim on which relief can be granted and for lack of jurisdiction. Accordingly, Plaintiffs' Motion for Preliminary Injunction will be denied as moot.

**VI.    Motion for Class Certification**

For purposes of the FAC's class claims, Plaintiffs move for certification of a "Songwriter Class" composed of all writer members of ASCAP and BMI, as well as an "Assignee Class" composed of all individuals or entities who are entitled to receive ASCAP and/or BMI writer royalties by virtue of a valid royalty assignment contract. (Doc. 12 at 11.) The Court will take Plaintiffs' Motion for Class Certification under advisement pending the parties' supplemental briefing on whether this Court has jurisdiction over the class claims asserted in Counts One, Five, and Six of the FAC.

**IT IS ORDERED** that Defendants' Motions to Dismiss (Docs. 22, 25) are **granted in part and taken under advisement in part**, as follows:

1. Counts Two, Three, Four, Seven, and Thirteen of the FAC are **dismissed with prejudice** for failure to state a claim on which relief can be granted.

2. Counts Eight, Nine, Ten, Eleven, Twelve, Fourteen, and Fifteen of the FAC are **dismissed without prejudice** for lack of jurisdiction.

3. Defendants O'Neill and Stallings are **dismissed**.

4. Defendants' Motions to Dismiss are **taken under advisement** with respect to Counts One, Five, and Six of the FAC.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 11) is **denied as moot**.

. . . .

1    **IT IS FURTHER ORDERED** that, within **fifteen (15) days** of the date this

2    Order is filed, Defendants shall file supplemental briefs.  Plaintiff may file a responsive

3    supplemental brief within **fifteen (15) days** of service of Defendants' supplemental

4    briefs.  No reply will be permitted absent leave of Court.  The parties' supplemental

5    briefs shall be limited to **seven (7) pages** each and shall address the issue of whether this

6    Court has jurisdiction under 28 U.S.C. § 1332(d)(2) and/or 28 U.S.C. § 1367 over Counts

7    One, Five, and Six of the FAC.

8    **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification

9    (Doc. 12) is **taken under advisement** pending the parties' supplemental briefing on

10    jurisdiction.

11    Dated this 30th day of July, 2021.

12

13

14

15    _____

16    Honorable Rosemary Márquez
      United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28