WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alexander C Baker, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>American Society of Composers, Authors and Publishers, et al.,<br><br>          Defendants. | No. CV-21-00022-TUC-RM<br><br>**ORDER** |

On March 25, 2021, Plaintiffs Alexander C. Baker ("Baker") and Adam Bravery LLC ("Adam Bravery") filed a First Amended Complaint ("FAC") (Doc. 10), suing Defendants American Society of Composers, Authors and Publishers ("ASCAP"), Broadcast Music, Inc. ("BMI"), Mike O'Neill ("O'Neill"), and Erika Stallings ("Stallings"), and asserting fifteen causes of action on behalf of themselves and purported classes of similarly situated songwriters ("Songwriters") and royalty assignees ("Assignees"). Shortly thereafter, Plaintiffs also filed a Motion for Preliminary Injunction (Doc. 11) and a Motion for Class Certification (Doc. 12). Defendants ASCAP, BMI, and O'Neill moved to dismiss the FAC. (Docs. 22, 25.)

In an Order dated July 30, 2021, the Court partially granted and partially took under advisement Defendants' Motions to Dismiss, denied as moot Plaintiffs' Motion for Preliminary Injunction, and took under advisement Plaintiffs' Motion for Class Certification. (Doc. 40.) The Court dismissed with prejudice Counts Two, Three, Four, Seven, and Thirteen of the FAC for failure to state a claim on which relief can be granted.

(*Id.* at 11-14, 20.)[1]  The Court dismissed without prejudice Counts Eight, Nine, Ten, Eleven, Twelve, Fourteen, and Fifteen for lack of subject-matter jurisdiction. (*Id.* at 15-17, 20.)  The Court also dismissed Defendants O'Neill and Stallings, as they were named as defendants only with respect to the dismissed claims. (*Id.* at 17-18, 20.)  The Court took the Motions to Dismiss under advisement with respect to Counts One, Five, and Six of the FAC ("the Remaining Counts") and ordered the parties to file supplemental briefs addressing whether the Court has subject-matter jurisdiction over those counts under 28 U.S.C. § 1332(d)(2) and/or 28 U.S.C. § 1367. (*Id.* at 16, 20-21.)  BMI and ASCAP filed their supplemental briefs on August 17, 2021 (Docs. 41, 42), and Plaintiffs responded on August 26, 2021 (Doc. 43).

I.  **Allegations of FAC**

As alleged in the FAC, ASCAP and BMI are not-for-profit Performance Royalty Organizations ("PROs") that collect and distribute performance royalty money to their writer and publisher members. (Doc. 10 at 6, 14, 17, 20 ¶¶ 1, 44, 59-60, 73.) Songwriters assign to ASCAP and BMI the right to license the public performances of their songs, and ASCAP and BMI in turn enter into license agreements with end-users of recorded music, charging an annual blanket license fee in exchange for the public performance rights to their repertories of music. (*Id.* at 18 ¶¶ 66-67.)  ASCAP and BMI together collect approximately $2 billion in license fees annually and, after deducting operating expenses, distribute the money on a quarterly basis as performance royalties. (*Id.* at 18 ¶ 68.)  Due to prior federal antitrust litigation, both ASCAP and BMI are bound by consent decrees issued by the United States District Court for the Southern District of New York. (*Id.* at 7, 21 ¶¶ 4, 79; *see also* Doc. 10-1 at 2-10, 92-100.)  BMI's consent decree requires BMI to include a mandatory arbitration clause in its standard writer's agreement. (Doc. 10 at 10 ¶ 83; *see also* Doc. 10-1 at 5.)

Plaintiff Baker is a songwriter and music producer who was a member of ASCAP from 1990-1999 and has been a member of BMI since 1999. (Doc. 10 at 8, 10, 13, 25 ¶¶

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

- 2 -

12, 18, 38, 99-100, 106.)  Plaintiff Adam Bravery is a limited liability company that has been assigned Baker's royalty stream.  (*Id.* at 8, 10-11, 13, 41-42 ¶¶ 12, 18, 24, 40, 185-191.)

The Remaining Counts of the FAC are asserted by Plaintiffs on behalf of themselves and the purported classes of Songwriters and Assignees.  In Count One, Plaintiffs seek a declaratory judgment stating that the mandatory arbitration clause contained in BMI's standard writer's agreement is void and unenforceable.  (Doc. 10 at 26-28 ¶¶ 111-121.)  In Count Five, Plaintiffs seek a declaratory judgment stating that ASCAP and BMI owe a fiduciary duty to Songwriters and Assignees.  (*Id.* at 36-38 ¶¶ 161-169.)  In Count Six, Plaintiffs allege that ASCAP and BMI breach their fiduciary duty by manipulating their royalty calculation formulas to underpay Songwriters.  (*Id.* at 38 ¶¶ 170-176.)  In addition to declaratory relief, Plaintiffs seek as relief on the class claims unspecified monetary damages, an injunction prohibiting ASCAP and BMI from disclaiming a fiduciary duty to Songwriters and Assignees, an injunction prohibiting BMI from compelling arbitration as a precondition of collecting performance royalties for Songwriters, an accounting of money received and distributed, and reimbursement of Plaintiffs' costs and attorneys' fees.  (*Id.* at 38-39 ¶ 177.)

**II.  Supplemental Briefs on Jurisdiction**

Under the Class Action Fairness Act ("CAFA"), district courts have original jurisdiction of a class action that meets minimum diversity and class numerosity requirements if the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2); *see also* 28 U.S.C. § 1332(d)(5)(B), (d)(6).  Both BMI and ASCAP argue in their supplemental briefs that the Court lacks jurisdiction over the Remaining Counts under 28 U.S.C. § 1332(d)(2) because Plaintiffs cannot meet their burden of establishing, by a preponderance of the evidence, that the aggregate amount in controversy on the class claims exceeds $5 million.  (Doc. 41 at 2-4; Doc. 42 at 2-7.)  In addition to this jurisdictional argument, Defendant BMI also argues in its supplemental brief that the

Remaining Counts fail to state a claim on which relief can be granted, that Plaintiffs lack standing to bring the class counts, and that the Court should transfer this case to the Southern District of New York if Count One is not dismissed. (Doc. 41 at 4-7.)

In response, Plaintiffs argue that the FAC plausibly alleges the existence of a fiduciary duty and BMI and ASCAP's breach of that duty, and that Songwriters can plausibly allege class-wide damages of $100 million. (Doc. 43 at 5-9.) Plaintiffs contend that they do not bear the burden of establishing the amount in controversy by a preponderance of the evidence because Defendants have not converted their jurisdictional challenge into a factual challenge. (*Id.* at 6-8.) Plaintiffs also argue that dismissal under Rule 12(b)(1) is improper because CAFA provides the basis for both the subject-matter jurisdiction of this Court and for Plaintiffs' substantive claim for relief. (*Id.* at 9-10.) Finally, Plaintiffs argue that if the Court is inclined to make factual findings, it should allow jurisdictional discovery and order Defendants to produce an accounting of their revenue and expenses for a recent year, as well as details of their royalty calculation formulas and Baker's performance survey data for one quarterly distribution. (*Id.* at 10-11.) Plaintiffs attach to their supplemental response a sworn declaration by Baker. (Doc. 43-1.)

**III.   Discussion**

    **A.   Subject-Matter Jurisdiction**

"The party seeking to invoke the district court's diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016). A party disputing jurisdiction may raise either a facial or factual challenge. *Id.* at 614. A facial jurisdictional challenge "accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks omitted). Such a challenge "is easily remedied by leave to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653." *Id.* In contrast, a factual jurisdictional challenge "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.*

(internal quotation marks and emphasis omitted).  When a defendant raises a factual jurisdictional challenge, the "plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and the "court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Plaintiffs' FAC does not specify the monetary damages sought in Count Six, nor does it specify the value of the injunctive relief sought in the Remaining Counts or the value of the declaratory relief sought in Counts One and Five.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").  However, Plaintiffs allege in their FAC that ASCAP and BMI together collect roughly $2 billion in license fees on an annual basis, retain a portion of that amount for operating expenses, and then distribute the remainder as performance royalties based on royalty calculation formulas.  (Doc. 10 at 18 ¶ 68.) Plaintiffs further allege that ASCAP and BMI manipulate or disobey their royalty calculation formulas in order to underpay Songwriters and transfer "undue amounts of money to society officers and others."  (*Id.* at 38 ¶¶ 175-176.)  In his sworn declaration, Baker states that he has inferred "that ASCAP [and] BMI are cheating songwriters while their officials are taking undeserved and untoward amounts of money for themselves," and that he believes "a proper audit of ASCAP [and] BMI will reveal a massive financial fraud, totaling hundreds of millions of dollars."  (Doc. 43-1 at 3 ¶¶ 13-14.)  Defendants dispute the truth of Plaintiffs' allegations and computation of damages (*see* Doc. 41 at 3-4; Doc. 42 at 4-7), but they present no evidence regarding the amounts of the collected license fees that are retained and distributed.

In *Lewis v. Verizon Communications, Inc.*, the Ninth Circuit found CAFA's

amount-in-controversy requirement satisfied where the named plaintiff sought to represent a class of Verizon customers subjected to unauthorized charges and Verizon supported removal with an affidavit establishing that the total charges exceeded $5 million. 627 F.3d 395, 397, 399-400 (9th Cir. 2010). The Court found that, absent pleading or proof showing that a substantial portion of the total charges were authorized, the entirety of the charges was in controversy for purposes of CAFA's amount-in-controversy requirement. *Id.* at 400-02. The Court clarified that "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Id.* at 400.

Pursuant to the holding of *Lewis*, CAFA's amount-in-controversy requirement is satisfied if the proponent of federal jurisdiction shows that the plaintiff is "seeking recovery from a pot . . . that could exceed $5 million," and the party opposing federal jurisdiction does not establish by pleading or proof that the class recovery is potentially any less. *Id.* at 401-02. Here, as in *Lewis*, Plaintiffs are "seeking recovery from a pot . . . that could exceed $5 million." *Id.* at 401. They allege that Defendants collect approximately $2 billion in license fees annually and improperly transfer a significant portion of those fees to ASCAP and BMI officials. Although Defendants dispute Plaintiffs' allegations, they have presented no evidence to support their position that less than $5 million is in controversy. Accordingly, the Court finds it appropriate to consider the entirety of the collected license fees as the amount in controversy. The Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

### B. Transfer to New York

Defendants seek dismissal of the Remaining Counts under Federal Rule of Civil Procedure 12(b)(6),[2] and they request transfer to the District of New York if dismissal is not granted. (*See* Doc. 22 at 18-19, 21; Doc. 25 at 17-22; Doc. 41 at 4-7.) Specifically, ASCAP argues in its Motion to Dismiss that, to the extent the FAC plausibly alleges any

---

[2] BMI also argues that Plaintiffs lack standing to assert the Remaining Counts and that Plaintiffs' claims are subject to mandatory arbitration. (Doc. 22 at 14-17; Doc. 41 at 6-7.)

claims against it, those claims should be transferred to a court in New York because the governing documents of Baker's writer's agreement with ASCAP contain a forum-selection clause providing that members' claims against ASCAP are subject to the exclusive jurisdiction of the courts of New York. (Doc. 25 at 8 n.1, 22.) Similarly, BMI argues that if this Court does not dismiss Count 1 challenging BMI's mandatory arbitration clause, the case should be transferred to the Southern District of New York because the arbitration clause is required by BMI's consent decree and the Southern District of New York has exclusive jurisdiction over challenges to BMI's consent decree. (Doc. 41 at 7.) Plaintiffs do not oppose transfer to the Southern District of New York, so long as the entire case is transferred. (Doc. 30 at 21-22.)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). By permitting transfer to any district "to which the parties have agreed by contract or stipulation," Section 1404(a) "provides a mechanism for enforcement of forum-selection clauses." *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 59-60 (2013).

Count One of Plaintiff's FAC implicates BMI's consent decree, as it challenges the mandatory arbitration clause contained in BMI's standard writer's agreement (Doc. 10 at 26-28 ¶¶ 111-121), and that arbitration clause is required by the consent decree (Doc. 10-1 at 5). BMI's consent decree states that the Southern District of New York retains jurisdiction "for the purposes of enabling either of the parties" to the consent decree to apply to that court "at any time for such further orders and directions as may be necessary or appropriate for the construction or carrying out" of the decree. (Doc. 10-1 at 8.) ASCAP's Compendium includes a forum selection clause subjecting claims by ASCAP members to the jurisdiction of the courts of New York. (Doc. 26-2 at 19.) Based on the jurisdictional retention in the consent decree, and ASCAP's forum selection clause, and in light of Plaintiffs' non-opposition to transfer, the Court will transfer this

matter to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[3]

Although Defendants request that this case be transferred only if this Court does not grant dismissal of all claims, the Court finds that Defendants' Rule 12(b)(6) arguments concerning the Remaining Counts of the FAC—as well as BMI's arguments concerning standing and mandatory arbitration—are more appropriately resolved by the Southern District of New York. Accordingly, the portions of Defendants' Motions to Dismiss requesting dismissal of Counts One, Five, and Six pursuant to Rule 12(b)(6), and the portion of BMI's Motion to Dismiss concerning standing and mandatory arbitration, shall remain under advisement pending resolution by the Southern District of New York.

### C. Motion for Class Certification

Plaintiffs filed their Motion for Class Certification (Doc. 12) three weeks before BMI appeared in this action (Doc. 18), and BMI therefore had no opportunity to respond to the Motion within the standard briefing deadlines set forth in the Local Rules of Civil Procedure. ASCAP filed a Response to the Motion for Class Certification, arguing that the Motion is "extraordinarily premature." (Doc. 15 at 2.) The Court will deny the Motion for Class Certification without prejudice and with leave to re-file after this case has been transferred to the Southern District of New York.

**IT IS ORDERED** that the remaining portions of Defendants' Motions to Dismiss (Docs. 22, 25) are **partially granted, partially denied, and partially taken under advisement**, as follows:

1. Defendants' Motions are denied to the extent they request dismissal of this action for lack of subject-matter jurisdiction;

2. Defendants' requests for transfer are granted;

3. Defendants' Rule 12(b)(6) arguments concerning Counts One, Five, and Six of the FAC, as well as BMI's arguments concerning standing and mandatory arbitration, remain pending for resolution by the Southern District of New York.

---

[3] Given that Plaintiffs do not oppose transfer if the entire case is transferred, the Court does not decide whether the forum selection clause in ASCAP's Compendium is binding on Plaintiffs. The Court notes that both ASCAP and BMI have their principal offices in New York. (Doc. 10 at 11, 14 ¶¶ 26, 42-43.)

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification (Doc. 12) is **denied without prejudice**, with leave to re-file after this case has been transferred to the Southern District of New York.

**IT IS FURTHER ORDERED** that the Clerk of Court shall transfer this case to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a).

Dated this 27th day of December, 2021.

_____
Honorable Rosemary Márquez
United States District Judge